**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT POLSKY and** | : | **CIVIL ACTION** |
| **LISA POLSKY** | : | |
| | : | |
| | : | |
| **v.** | : | **No. 14-655** |
| | : | |
| | : | |
| **DANIEL I. WERFEL,** | : | |
| **Acting Commissioner, IRS** | : | |

**MEMORANDUM OPINION**

Savage, J.                                                    February 23, 2015

  The central and dispositive issue in this action is whether a permanently and totally disabled child who is older than seventeen and qualifies as a dependent under section 152(c) of the Internal Revenue Code ("IRC") also qualifies for the child tax credit under section 24 despite the age limitation of seventeen in section 24. Considering the plain language of the statute and its legislative history, we conclude that she does not.

  The *pro se* plaintiffs, Robert and Lisa Polsky, parents of a permanently and totally disabled child, claim that they have been deprived of their right to due process under the Fourteenth Amendment because the Internal Revenue Service ("IRS") intentionally prevented them from appealing the disallowance of the child tax credit ("CTC") for the years 2010 and 2011 to the Tax Court. They contend that the IRS misapplied and misinterpreted 26 U.S.C. §§ 24 and 152 of the IRC. They believe that because their daughter qualifies as a dependent under § 152(c), she is also qualified as a dependent for a tax credit under § 24 regardless of her age.

  Moving to dismiss the complaint, the Commissioner argues that the Polskys are

actually seeking a tax refund under 26 U.S.C. § 7422.  He contends that not only have they improperly named him as a defendant,[1] but they have also failed to state a claim under § 7422 because they do not qualify for a refund of the child tax credit.  The Commissioner further argues that to the extent the Polskys' complaint can be construed as asserting a claim under 42 U.S.C. § 1983 for a violation of their constitutional rights, the court lacks jurisdiction because neither the United States, the IRS nor the Commissioner can be sued under § 1983.

Whether it is a claim of a constitutional violation or one for a tax refund, the Polskys cannot prevail.  If it is an action for a constitutional violation, the Polskys cannot establish any constitutional injury or damage to support a cause of action for deprivation of due process.  If it is a claim for a refund, they are not entitled to a refund because they do not qualify for the tax credit.  Therefore, we shall grant the motion to dismiss the complaint.

## Background

According to the allegations in the complaint,[2] the Polskys claimed the § 24 child tax credit for their permanently disabled daughter Amanda for tax years 2010 and 2011.  The IRS disallowed the credit for both tax years on the ground that Amanda was over

---

[1] The Commissioner argues that the court should substitute the United States as the only proper defendant to a refund suit under 26 U.S.C. § 7422(f)(1) and (2).  *See* Def.'s Mot. to Substitute the United States for Daniel I. Werfel and Mot. to Dismiss at 2-3 (Doc. No. 9-1).

[2] When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiffs.  *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  We may also consider documents attached to the complaint.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Additionally, the *pro se* plaintiffs' pleadings must be considered deferentially, affording them the benefit of the doubt where one exists.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).  With these standards in mind, we shall accept as true the facts as they appear in the Polskys' complaint and draw all possible inferences from these facts in their favor.

2

seventeen years old.[3]  The IRS initially communicated this denial in a Math Error Notice sent to the Polskys on May 16, 2011, for tax year 2010, and on June 25th, 2012, for tax year 2011 in which it corrected their returns by recalculating the tax liability with the disallowance of the CTC.[4]

The Polskys allege that after contacting the IRS multiple times "to resolve the wrongful disallowance of the tax credits," sometime in 2012, the IRS instructed them to "submit amended returns for tax years 2010 and 2011 specifically stating the reasons why [their] dependent daughter over the age of 17 should be a qualified dependent for the Child Tax Credit."[5]  In December 2012, they submitted amended returns for tax years 2010 and 2011, in which they requested that the IRS review Amanda's "qualified dependent status" and rule on this issue as a "qualified dependent" claim, not as a "Math Error" or other "small mistake."[6]

In March of 2013, not having received a response from the IRS, the Polskys sent a letter to the IRS Commissioner inquiring about the status of their returns.  The IRS responded on April 22, 2013, explaining its reasons for disallowing the child tax credit:

> The amended returns you sent in were received December 26, 2012. There were no changes made to your account because we believe the original change we made was correct.
>
> You were not allowed the Child Tax Credit for your dependent Amanda because she did [not] qualify for this credit. In order

---

[3] Amanda was age 20 in 2010 and age 21 in 2011.  *See* April 22, 2013 letter from IRS to Mr. Polsky (Pls.' Response to the Mot. to Dismiss ("Pls.' Resp."), Ex. 1 at 32) (Doc. No. 10).

[4] Pls.' Resp. at 22; Tax Court Order at 1 (Pls.' Resp., Ex. 2 at 33).

[5] Compl. at 3.

[6] Compl. at 3.

> to qualify for the Child Tax Credit the dependent must be under the age of 17 by the end of the tax year. Our records show that Amanda was age 20 in 2010 and age 21 in 2011.
>
> You questioned the qualifications because she is disabled . . . [T]he fact that she is disabled does not change whether she qualifies for the Child Tax Credit. This credit is based on the age of the dependent only. This is the reason that your tax was higher than you anticipated.
>
> The fact that she is disabled does make a difference in being able to claim her as a dependent, and if you qualify, the Earned Income Tax Credit.[7]

Because they disagreed with the IRS's interpretation of a "qualifying child" under § 24, the Polskys filed a petition in the Tax Court challenging the IRS's decision.  In their petition, filed on May 29, 2013, they requested a determination that they were entitled to claim the CTC for their daughter Amanda for tax years 2010 and 2011.[8]  On July 17, 2013, the Commissioner moved to dismiss the Polskys' petition for lack of jurisdiction because no Notice of Deficiency had been issued, a prerequisite to confer jurisdiction on the Tax Court.  He also argued that the petition should be dismissed because the Polskys did not timely appeal the Math Error Notices by filing a request for abatement as required under 26 U.S.C. § 6213(b).  On August 8, 2013, concluding that without a Notice of Deficiency, it lacked jurisdiction to determine a deficiency in or overpayment of the Polskys' tax for 2010 or 2011, the Tax Court granted the Commissioner's motion.[9]

### Plaintiffs' Claims

Asserting claims under § 1983 and the Fourteenth Amendment, the Polskys

---

[7] *See* April 22, 2013 letter from IRS to Mr. Polsky (Pls.' Resp., Ex. 1 at 32).

[8] Compl. at 4; Tax Court Order at 1.

[9] Compl. at 5; Tax Court Order at 1.

contend that the IRS deliberately prevented them from appealing the disallowance of the child tax credit in order to preclude the Tax Court from issuing a final and non-appealable ruling in their favor rejecting the IRS's interpretation of a "qualifying child" under § 24.[10] They contend that the IRS has a "zealous goal of preventing the legality of [its] actions from being reviewed by any oversight court" and wants "to avoid any judicial oversight, checks or balances."[11]

According to the Polskys, the IRS acted improperly when, in denying their claim for the CTC, it issued Math Error Notices.  They contend that the IRS issued the Math Error Notices instead of Notices of Deficiency as a "guise," characterizing their claim for the tax credit as a "minor error" or "small mistake."[12]

The Polskys claim that the IRS denied them due process by directing them to submit improper documents for the purpose of defeating any appeal they could have taken.[13] They argue that after they disputed the basis for the Math Error Notices, the IRS improperly advised them to submit amended returns and later accepted them.  They assert that the IRS then took a contrary position before the Tax Court, arguing that the Polskys' petition to review the IRS's disallowance of the tax credit should be dismissed because the Polskys did not timely appeal the Math Error Notices by requesting an abatement as required under 26 U.S.C. § 6213(b).

---

[10] Pls.' Resp. at 12; Compl. at 2-3.

[11] Pls.' Resp. at 6-7.  The plaintiffs also seek to certify their lawsuit as a class action under Fed. R. Civ. P. 23, defining the class as taxpayers who tried to claim a "totally and permanently disabled" person as a qualified dependent for purposes of the CTC, and the IRS disallowed their claim.  Compl. at 6 ¶¶ 1-2.

[12] Compl. at 3, 5; Pls.' Resp. at 22.

[13] Compl. at 5.

According to the Polskys, the IRS continued its effort to prevent the Tax Court from reviewing its interpretation of the CTC by refusing to rule on their amended returns.  They argue that because they were not challenging math errors, but were challenging the IRS's determination of Amanda's "qualifying child" status, the IRS was required either to find in their favor or deny their challenge with a formal finding on their amended returns in the form of a Notice of Deficiency.  Characterizing the IRS's April 2013 letter as a "refus[al] to rule on the amended return," the Polskys assert that the IRS did neither.[14]  They contend that because the Tax Court cannot consider an appeal in the absence of a Notice of Deficiency, the IRS "deliberately" did not issue a Notice of Deficiency for the amended returns in order to block them from "seeking judicial review of the IRS decision."[15]

The Polskys allege that they have been financially damaged because they incurred a higher tax liability than they should have, and were "required to allocate time and resources to defend against the violation of their right to due process and [sic] law."[16]  They make it clear that they are "not seeking monetary compensation from the Federal Court."[17]  Rather, they ask us to "instruct" the IRS to adjust their tax liability to reflect the CTC for tax years 2010 and 2011 and for "future tax years," and to reimburse them for taxes they overpaid.[18]  They also ask us to "instruct" the IRS to "immediately review all prior IRS rulings on tax returns from all tax filers," and make the "appropriate corrections to tax

---

[14] Compl. at 3-4; Pls.' Resp. at 12, 22, 29.

[15] Compl. at 5.  *See also* Pls.' Resp. at 4 (the IRS "refus[ed] to properly address their amended returns for the tax years 2010 and 2011 for the purpose of denying them appellate relief with the S-Tax Court").

[16] Compl. at 7.

[17] Compl. at 7.

[18] Compl. at 8, ¶ 6.

liability."[19]   They also request us to "instruct" the IRS to "adjust the wording to future instructions for the child tax credit" and make them "more complete and more accurate."[20] Alternatively, they ask us to "instruct" the IRS to issue a Notice of Deficiency to the plaintiffs and "direct this case into Tax Court."[21]

The parties characterize the basis for the Polskys' claim differently.   The Commissioner argues that the action is simply a claim for a tax refund.   On the other hand, the Polskys assert that it is an action based on a constitutional procedural due process violation. They allege that they were denied "a legitimate tax deduction" and were "denied due process of administrative procedure and due process of law in that the plaintiffs are required to allocate time and resources to defend against the violation of their right to due process and law."[22]   Their claim is based upon their belief that the IRS intentionally did not issue a Notice of Deficiency so that their appeal to the Tax Court would be dismissed.  This conduct, the plaintiffs argue, deprived them of the opportunity to prosecute an appeal from the denial of the tax credit.[23]   In either case, the cause of action is founded on the theory that the IRS wrongfully disallowed the tax credit under 26 U.S.C. § 24.

The parties' disagreement may result from a misunderstanding of the process that led to this court and how the Polskys cast their claims.   Therefore, it will be helpful to examine the claims in the context of the routes that were available to the Polskys to

---

[19] Compl. at 8, ¶ 7.

[20] Compl. at 8, ¶ 8.

[21] Compl. at 8, ¶ 10.

[22] Compl. (Doc. No. 3) at 7.

[23] Compl. at 5.

challenge the disallowance of the CTC.

*Administrative Route*

When tax returns are filed, they are "checked for form, execution, and mathematical accuracy." Treas. Reg. § 601.105(a).[24] If a return contains a mathematical or clerical error that results in more tax due than is shown on the return, the IRS corrects the error and sends a correction notice to the taxpayer. Treas. Reg. § 601.105. The IRS is authorized to immediately assess the new amount of tax with the error corrected, provided it: (1) notifies the taxpayer of the error; (2) explains the error; and (3) tells the taxpayer that a new assessment of the tax has been made based on the correct amount of tax. 26 U.S.C. § 6213(b)(1); *Galvan v. C.I.R.*, T.C. Summ. Op. 2012-112, 2012 WL 5499833, at *5 n.12 (2012) (citing *Heasley v. Comm'r*, 45 T.C. 448, 457 (1966); *Ciciora v. Comm'r*, T.C.M. 2003-202, 2003 WL 21545884, at *2 (2003)); *Malone v. C.I.R.*, T.C. Summ. Op. 2011-24, 2011 WL 839767, at *8 (2011).

Contrary to the Polskys' contention that the IRS improperly issued Math Error Notices when it disallowed their claim for the CTC for tax years 2010 and 2011, a Math Error Notice was the proper document to inform the Polskys that they were not entitled to the CTC for their daughter. The IRC defines "[m]athematical or clerical error[s]" by describing sixteen errors. 26 U.S.C. § 6213(g). The corrections made by the IRS on the Polskys' 2010 and 2011 tax returns are the type of "mathematical errors" described in both § 6213(g)(2)(L) and the IRS Manual.

26 U.S.C. § 6213(g)(2)(L) describes the math error pertinent to this case as:

---

[24] Department of the Treasury Regulations are published under title 26 of the Code of Federal Regulations (C.F.R.).

the inclusion on a return of a TIN [Taxpayer Identification Number] required to be included on the return under section . . . 24 . . . if – (i) such TIN is of an individual whose age affects the amount of the credit under such section, and (ii) the computation of the credit on the return reflects the treatment of such individual as being of an age different from the individual's age based on such TIN.

*Id.* § 6213(g)(2)(L).  Similarly, the IRS Manual states that a mathematical or clerical error:

involve[s] . . . the inclusion of a required TIN if it is of an individual whose age affects the credit amount and when a different age affects the computation of the credit.  Example: A taxpayer claims the child tax credit for a dependent who was over age 16 at the end of the tax year.

Internal Revenue Manual § 21.5.4.2.1(J).

Because the Polskys' claim for the tax credit for a child who was over seventeen by the end of the tax year was a "mathematical error," and the IRS is required to correct math errors on tax returns and send a "correction notice" of the error to the taxpayer, *see* Treas. Reg. § 601.105(a), the IRS did nothing improper by sending the Polskys a Math Error Notice.

There are two routes a taxpayer can take to challenge a Math Error Notice.  A taxpayer can file a request for an abatement of the proposed tax assessment with the IRS within sixty days of the date of the IRS sending the Math Error Notice. 26 U.S.C. § 6213(b)(2)(A).  The assessment must be abated if a timely abatement request is made. 26 U.S.C. § 6213(b)(2)(A); *Swiggart v. C.I.R.*, T.C.M. 2014-172, 2014 WL 4195541 (2014). If, after abating the assessment, the IRS determines that there is a "deficiency,"[25] which

---

[25] Unlike an assessment, a deficiency is a provisional determination made by the IRS and does not have the force of a judgment.  Michael I. Saltzman & Leslie Book, *IRS Practice and Procedure* ¶ 10.01[1] (rev. 2d ed. 2002).

is the difference between the taxpayer's liability as calculated by the IRS and the amount shown on the taxpayer's return, the IRS will send the taxpayer a Notice of Deficiency.[26]  26 U.S.C. §§ 6211(a), 6212(a), 6213(b)(2)(A); Treas. Reg. § 301.6211-1(a); *Miles Production Co. v. C.I.R.*, 987 F.2d 273, 277 (5th Cir. 1993) (citation omitted).

A Notice of Deficiency is the taxpayer's "ticket to the Tax Court" to litigate the merits of the deficiency determination. *Robinson v. U.S.*, 920 F.2d 1157, 1158 (3d Cir. 1990) (citing *Delman v. Comm'r*, 384 F.2d 929, 934 (3d Cir. 1967)).  If a taxpayer files a timely petition[27] in the Tax Court, no assessment of the deficiency may take place until the Tax Court has rendered its final decision as to the "amount redetermined as the deficiency." Treas. Reg. §§ 601.103(c)(2), (3).[28]  Once that decision is made, the taxpayer is assessed that amount, which is immediately payable. Treas. Reg. § 601.103(c)(2).  If the taxpayer does not file a timely petition with the Tax Court, the deficiency will be assessed.  In that case, the taxpayer must pay the deficiency amount.  Treas. Reg. § 601.103(c)(2).

Another way a taxpayer may challenge a Math Error Notice is to file an administrative claim with the IRS for a credit or refund.  26 U.S.C. § 6511(a) (taxpayer may make a claim for a credit or refund of an overpayment of any tax; Treas. Reg. § 601.105(e)(1) (taxpayer may "contest the assessment by filing a claim for refund or credit

---

[26] The IRS must mail the Notice of Deficiency within three years after the tax return was filed.  26 U.S.C § 6501; *Mecom v. C.I.R.*, 101 T.C. 374, 382 (1993).

[27] The taxpayer has ninety days from the issuance of the Notice of Deficiency to file a petition with the Tax Court for a redetermination of the proposed deficiency. 26 U.S.C. § 6213(a); Treas. Reg. § 601.103(c)(2).

[28] The U.S. Tax Court is the only court where a taxpayer can litigate his tax liability without paying first. Bittker and Lokken, *Federal Taxation of Income, Estates and Gifts*, § 115.2.1 (2d ed. 2012).

for all or any part of the amount paid"); Treas. Reg. § 601.103(c)(3) (same).[29]  The claim

is made by submitting an amended tax return.  *See* Treas. Reg. § 301.6402-3(a)(5) (A

properly executed amended return "shall constitute a claim for refund or credit . . . for the

amount of the overpayment disclosed by such return"); Treas. Reg. § 301.6402-3(a)(2) ("In

the case of an overpayment of income taxes for a taxable year of an individual for which

a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X

('Amended U.S. Individual Income Tax Return')"); Treas. Reg. § 601.105(e) (same); *Minuti

v. I.R.S.*, 502 F. App'x. 161, 162 (3d Cir. 2012); *McKenzie v. I.R.S.*, Civ. A. No. 12-1336,

2013 WL 1181801, at *5 (W.D. Pa. March 20, 2013) (submitting an amended form

constitutes filing a "formal claim" with the IRS for a tax credit or refund).

        If the claim is allowed, the overpayment will be refunded to the taxpayer.  If the claim

for refund is rejected, in whole or in part, the taxpayer "may then bring suit in the United

States District Court or in the United States Claims Court for recovery of the tax."  Treas.

Reg. § 601.103(c)(3).  This is commonly referred to as a § 7422 refund suit.  *See* 26

U.S.C. § 7422.

        An administrative claim for refund or credit must be filed within the applicable

statutory period of limitation.  Treas. Reg. § 601.105(e)(1).  When a claim is filed in the

form of an amended tax return, the limitations period is three years from the time the

original return was filed or two years from the time the tax was paid, whichever period is

later.  26 U.S.C. § 6511(a); *U.S. v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 5 (2008)

---

[29] This "appeals" procedure is available to the taxpayer if, after receiving a Notice of Deficiency, instead of filing a petition with the Tax Court for a redetermination of the tax, he pays the tax.  Treas. Reg. § 601.103(c)(3) ("After payment of the tax [,] a taxpayer may . . . contest the assessment by filing with the district director a claim for refund of all or any part of the amount paid, except with respect to certain taxes determined by the Tax Court, the decision of which has become final").

(citing § 6511(a)).

As stated above, the Polskys had two options to contest the Math Error Notice. One was to request an abatement of the proposed tax assessment. *Id.* §§ 6213(b)(1), (b)(2)(A). Upon receipt of an abatement request, the IRS would have issued a Notice of Deficiency. *Id.* § 6212(a). They did not pursue this option.

The other option was to file a claim with the IRS for a tax refund or credit by submitting an amended return. At the direction of the IRS, this is the route they took. The filing of amended returns constituted a formal administrative claim for a refund or credit. *See* Treas. Reg. § 301.6402-3(a)(5). The amended returns were filed in December of 2012, within three years from the time the original returns were filed, making their administrative claim timely. 26 U.S.C. § 6511(a).

*Judicial Route*

Although the Polskys contend that they are not bringing a refund action, their claim that the IRS erroneously assessed their tax when it disallowed the § 24 child tax credit is the type of claim covered by the § 7422 refund statute. Because the jurisdictional and procedural requirements for filing a refund suit are satisfied, we shall construe their claim as such.

First, a taxpayer may bring a refund suit in a district court or the United States Court of Federal Claims ("Claims Court")[30] against the United States for tax erroneously assessed. 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1) ("The district courts shall have

---

[30] One difference between the two courts is the availability of a jury trial in district court, but not in the Claims Court. Bittker and Lokken, *Federal Taxation of Income, Estates and Gifts*, § 115.1 (2d ed. 2012). Another difference is that appeals from the Claims Court are to the United States Court of Appeals for the Federal Circuit, while appeals from the district court are to the court of appeals for the circuit embracing the district. *Id.*; 28 U.S.C. §§ 1291, 1295(a)(3), 1294(1).

original jurisdiction, concurrent with the [Claims Court], of: (1) [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected"); *Clintwood Elkhorn Mining*, 553 U.S. at 4 (citing 28 U.S.C. § 1346(a)(1)).  Additionally, although a § 7422 refund suit may only be brought against the United States, not an officer or employee of the United States, if a taxpayer names an officer or employee of the United States as the defendant, as the plaintiffs did with the Commissioner, the court may order that the United States be substituted as the only defendant.  26 U.S.C. § 7422(f)(1) and (2).[31]  Thus, this court has jurisdiction over the Polskys' refund action.

Second, before filing a § 7422 refund suit in federal district court, the taxpayer must exhaust administrative remedies by filing a "claim for refund or credit" with the IRS.  26 U.S.C. § 7422(a); *Clintwood Elkhorn Mining*, 553 U.S. at 4 ("The Internal Revenue Code specifies that before [suing the government in federal court], the taxpayer must comply with the tax refund scheme established in the Code"); *Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 351-52 (3d Cir. 2000) (noting that a timely-filed refund claim is a jurisdictional prerequisite to the filing of a § 7422 action for a tax refund).  *See also* Treas. Reg. § 301.6402-2(a) ("[U]nder section 7422, a civil action for refund may not be instituted unless a claim has been filed within the properly applicable period of limitation.").  The Polskys exhausted their administrative remedies by timely filing their refund claim with the IRS when they submitted their amended returns.  *See* Treas. Reg. § 301.6402-3(a)(5).

Finally, the limitations period for bringing a § 7422 refund suit in the district court is

---

[31] Thus, pursuant to 26 U.S.C. § 7422(f)(1) and (2), the United States shall be substituted for Daniel I. Werfel as the defendant.

two years from the time the IRS notified the taxpayer via certified or registered mail of the disallowance of the claim.  26 U.S.C. § 6532(a)(1); Treas. Reg. § 601.103(c)(3).  In the event the IRS does not rule on the claim, the taxpayer must wait at least six months after he has filed his claim before bringing a § 7422 refund suit in district court.  When the IRS does not issue a ruling, there is no limitation period for bringing an action.  *Id.*; I.R.S. Chief Counsel Notice CC-2012-012 (June 1, 2012) (stating that § 6532's two-year limitation period is triggered only by the IRS's mailing of a notice of disallowance or the taxpayer's waiver of such a notice, but acknowledging that three district courts have held that a general six-year limitation period applies under 28 U.S.C. § 2401) (citations omitted)). Whether the April 22, 2013 letter from the IRS[32] explaining why it denied their CTC claim premised on their amended returns was notice of the disallowance of their claim or, as the Polskys characterize it, a "refusal to rule" on their amended returns, under either scenario, they timely filed a § 7422 refund suit.  This action was filed within two years of the April 22, 2013 letter, and was also filed six months after the Polskys filed their amended returns.

Even though the Polskys meet all of the jurisdictional and procedural requirements to bring a § 7422 refund suit against the United States in the district court, they still cannot prevail on the merits of their claim.  As we explain below, taxpayers are not entitled to take a § 24 tax credit for a disabled child who is at least seventeen years old during the tax year in question.  Therefore, the motion to dismiss the action as a refund suit must be granted.

---

[32] *See* Pls.' Resp., Ex. 1 at 32.

**The Child Tax Credit**

The Polskys believe that because their daughter qualifies as a "dependent" under § 152, she necessarily qualifies for the child tax credit under § 24 even though she is older than seventeen.  They are incorrect.

When interpreting a statute, "our goal is to ascertain the intent of Congress." *Sweger v. Chesney*, 294 F.3d 506, 516 (3d Cir. 2002) (quoting *Ross v. Hotel Employees and Restaurant Employees Int'l Union*, 266 F.3d 236, 245 (3d Cir. 2001)).  We look to the statute's language to determine its plain meaning.  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296-97 (2006) (citation omitted); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).  If the language is plain and unambiguous, the inquiry ends.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)); *United States v. Williams*, 675 F.3d 275, 277-78 (3d Cir. 2012).

The IRC provides a tax deduction for an exemption for a "dependent," 26 U.S.C. § 151(a),(c), and a tax credit for a "qualifying" child.  *Id.* § 24.  The distinction has a significant impact upon the taxpayer.  An exemption under § 151 is a deduction from adjusted gross income, resulting in a lower taxable income.  A credit is subtracted from the tax liability.  Under § 24, the taxpayer is entitled to a credit of up to $1,000.00 per child, known as the child tax credit, when his or her tax liability exceeds or is equal to the credit.[33]

---

[33] The CTC allows taxpayers to claim a tax credit of $1,000 per child provided certain criteria, such as age, dependent status and income limits, are met.  *See* 26 U.S.C. § 24(a), (b).  Although the amount of the CTC is limited to the taxpayer's regular tax liability, *see* 26 U.S.C. § 26(a), a portion of the $1,000 CTC that exceeds actual tax liability is refundable for certain taxpayers with earned income.  *See id.* § 24(d)(1); *see also* 8 Mertens Law of Fed. Income Tax § 32:34; *In re Vazquez*, 516 B.R. 523, 526-27 (Bankr. N.D. Ill. 2014) (quoting Margot L. Crandall–Hollick, *The Child Tax Credit: Current Law and Legislative History*, Congressional Research Service, March 25, 2013 (www.crs.gov, 7–5700, R41873)).  This refundable portion of the CTC is

Section 151 allows a deduction of the exemption amount for "each individual who is a dependent (as defined in section 152) of the taxpayer."  26 U.S.C. § 151(c).  Section 152 defines "dependent" as "a qualifying child."  26 U.S.C. § 152(a).  A "qualifying child" is then defined in § 152(c) as a child or sibling of the taxpayer who lived with the taxpayer for more than one-half of the year, did not provide more than one-half of his or her own support, and meets the age requirements of § 152(c)(3).  26 U.S.C. § 152(c)(1) and (2).  To meet the age requirements of § 152(c)(3), the child must, at the close of the calendar year, be under nineteen years old or a student under twenty-four years old.  26 U.S.C. § 152(c)(3)(A).

There is a special rule for a permanently and totally disabled dependent.  *Id.* § 152(c)(3)(B).  That rule deems the age requirements of § 152(c)(3)(A) to have been met if, "at any time during such calendar year," the dependent was "permanently and totally disabled."[34]  *Id.* § 152(c)(3)(B).  In other words, there is no age requirement for a totally disabled child to qualify as a dependent under § 152(c).

Section 24 allows a credit "with respect to each *qualifying child* of the taxpayer [in] an amount equal to $1,000."  26 U.S.C. § 24(a) (emphasis added).  Section 24's definition of "qualifying child" is different from § 152's definition.  Section 24 imports the basic qualifications from § 152(c), and  adds an age limitation of seventeen years.  Specifically,

---

referred to as the "additional child tax credit," the amount over and above the amount used to offset tax liability.  26 U.S.C. § 24(d); *In re Borgman*, 698 F.3d 1255, 1258 (10th Cir. 2012).  *See also In re Atwood*, No. 13-13193, 2014 WL 2860992 (Bankr. S.D. Ind. June 23, 2014).

[34] "Permanently and totally disabled" is defined as an individual who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  26 U.S.C. § 22(e)(3).

it provides that, "[f]or purposes of [§24], . . . [t]he term 'qualifying child' means a qualifying child of the taxpayer (as defined in section 152(c)) who has not attained age 17."  26 U.S.C. § 24(c)(1).  A "qualifying child" in § 24 is defined, in part, by reference to the definition of a "qualifying child" in 26 U.S.C. § 152(c).  Thus, to qualify for the § 24 child tax credit, the taxpayer's child must meet the requirements of a "qualifying child" under both: (1) section 152(c)(1), which requires that she lived with the taxpayer a majority of the tax year and did not contribute to more than one-half of her own support; *and* (2) section 24(c)(1), which requires that she was younger than seventeen years old at the close of the tax year.

Based on the plain language of the IRC, there is an age limit for the child tax credit, but none for a § 151 dependent exemption or deduction.  The age restriction in § 24(c)(1) is intended to end the tax *credit* when the child reaches seventeen years of age.  In contrast, the special rule applicable to permanently and totally disabled dependents in § 152(c)(3)(B) is calculated to extend the tax *deduction* as long as the child is disabled.  Therefore, the taxpayer can take a dependent deduction regardless of the child's age as long as the child is permanently and totally disabled, but cannot receive a tax credit for a disabled child who, by the close of the taxable year, was seventeen years of age.

Section 24(c) sets forth two criteria a taxpayer must meet to claim an individual as a "qualifying child" eligible for the child tax credit.  The qualifying child must meet the definition of "qualifying child" in section 152(c) and be under seventeen.  Section 152(c) lists several requirements that define a "qualifying child," including relationship, support,

residency[35] and age criteria.  Section 152(c)(3)(A)'s age limits, which are nineteen years for a non-student and twenty-four years for a student, differ from the age limit of seventeen in § 24(c)(1).  Section 152(c)(3)(B)'s special rule for the disabled, which is part of §152(c)'s age requirements, also differs from § 24(c)'s age limit.  Had Congress intended the same age requirements for the § 152 dependent exemption and the § 24 child tax credit, it would not have included a different age requirement in § 24(c).  Instead, it is clear that Congress intended that only § 152(c)'s relationship, support and residency requirements, and not its age requirement, apply to § 24(c).

Because the plain meaning of the statute is clear and unambiguous, an examination of its legislative history is unnecessary.  *Byrd v. Shannon*, 715 F.3d 117, 122-23 (citing *Ron Pair Enters.*, 489 U.S. at 242); *cf. Patterson v. Shumate*, 504 U.S. 753, 761 (1992) (resorting to legislative statutory history is appropriate where language of statute is ambiguous or confusing)).  Nevertheless, because we assume that Congress would not have set an age limit of seventeen for the CTC without explaining its reasoning, we look at the legislative history.  A review of § 24(c)'s history reinforces our interpretation of § 24(c).

The CTC was created in 1997 by the Taxpayer Relief Act of 1997 ("1997 Act") to "help ease the financial burden that families incur when they have children." *In re Vazquez*, 516 B.R. 523, 526-27 (Bankr. N.D. Ill. 2014) (quoting Margot L. Crandall-Hollick, *The Child*

---

[35] To meet § 152(c)'s relationship requirements, the "qualifying child" must be a child of the taxpayer or a descendant of such a child, or a brother, sister, stepbrother, or stepsister of the taxpayer or a descendant of any such relative.  26 U.S.C. § 152(c)(2).  To meet the support requirements, the "qualifying child" must not have provided over one-half of his or her own support for the calendar year in which the taxable year of the taxpayer begins.  *Id.* § 152(c)(1)(D).  To meet the residency requirements, he or she must have lived in the taxpayer's principal residence for more than half of the taxable year.  *Id.* § 152(c)(1)(B).

*Tax Credit: Current Law and Legislative History*, Congressional Research Service, March 25, 2013 (www.crs.gov, 7–5700, R41873) (citing P.L. No. 105-34)).   In explaining the differences between the House bill, the Senate Amendment and the final version agreed to in conference, the conference report accompanying the 1997 Act clarifies that Congress intended to impose an age limit of seventeen on the CTC.   *See* Joint Explanatory Statement of the Conference Committee, H.R. Conf. Rep. No. 220, at 329.   Specifically, the "House bill provide[d for] a $500 ($400 for taxable year 1998) . . . tax credit for each qualifying child under the age of 17."   H.R. Conf. Rep. 105-220 at 330.   The "Senate amendment provide[d] a $500 ($250 in 1997 for children under the age of 13) . . . tax credit for each qualifying child under the age of 17[, and for] taxable years beginning after December 31, 2002, the credit [was] allowed for each qualifying child under the age of 18."   H.R. Conf. Rep. 105-220 at 332.   The conference agreement, which became the final version of the law, adopted the House bill's age limitation of seventeen.   H.R. Conf. Rep. No. 105-220 at 332.

The final version of the CTC provision in the 1997 Act read, in pertinent part:

(a) **Allowance of Credit**.–There shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer an amount equal to $500 ($400 in the case of taxable years beginning in 1998).

\*          \*          \*          \*

(c) **Qualifying Child**.–For purposes of this section–

(1) **In general.** – The term "qualifying child" means any individual if–

(A) the taxpayer is allowed a deduction under section 151 with respect to such individual for the taxable year,

> (B) such individual has not attained the age of 17 as of the close of the calendar year in which the taxable year of the taxpayer begins, and
>
> (C) such individual bears a relationship to the taxpayer described in section 32(c)(3)(B).[36]

26 U.S.C. § 24(c) (1998).

Thus, under the 1997 Act, § 24 listed three requirements of a "qualifying child": (1) the taxpayer had to be eligible to take a deduction for a dependent exemption under section 151;[37] (2) the individual was the taxpayer's son, daughter, stepson, stepdaughter, grandchild or eligible foster child of the taxpayer; *and* (3) the individual was under age seventeen at the end of the tax year.

The clear and unambiguous language in the initial version of the law afforded the CTC only for a child under seventeen. The age limit of seventeen is a separate and distinct requirement.[38] The conference committee adopted the House bill version, which provided for a $500 tax credit "for each qualifying child under the age of 17." H.R. Conf. Rep. No. 105-220 at 330-33.

------

[36] 26 U.S.C. § 32(c)(3)(B) (1997) sets forth the "relationship test" for determining who is a "qualifying child" of the taxpayer eligible for the earned income tax credit ("EITC").

[37] Under the version of § 151 in effect at that time, a taxpayer was allowed a dependent exemption for an individual who met relationship and support criteria set forth in § 152 and age and income criteria set forth in § 151(c). 26 U.S.C. § 151 (1997). A dependent who was a child of the taxpayer and under nineteen or a student under twenty four at the close of the tax year met the age requirements of § 151(c). *Id.*

[38] Although the 1997 version of § 151 contained different age criteria, *see supra* note 37, and the first requirement set forth in § 24(c)(1)(A) for a "qualifying child" was eligibility for a dependent deduction under § 151, it is clear that § 151's age criteria did not apply to the CTC provision. The CTC provision from the 1997 Act required the application of tests from different provisions and inserted its own age requirements. It applied the "relationship test" of the EITC provision, and added an age limit of seventeen. *See* § 24(c)(1)(B) and (C). Because age and relationship criteria were explicitly set forth in § 24(c)(1)(B) and (C), the age and relationship criteria that were part of § 151 could not apply. Thus, the support and income requirements of § 151 were the only relevant criteria to apply to § 24(c).

Although § 24 was amended several times,[39] the language regarding the definition of a "qualifying child" remained unchanged from the time of the CTC's enactment in 1997 until 2004.  With the enactment of the Working Families Tax Relief Act of 2004 ("2004 Act"), the language of § 24(c) changed.  P.L. 108-311 (enacted Oct. 5, 2004).  But, the age limit of seventeen years remained.

Section 24(c) was amended to read as follows:

> (c) **Qualifying child.**  -- For purposes of this section --
>
> (1) **In general**. – The term "qualifying child" means a qualifying child of the taxpayer (as defined in section 152(c)) who has not attained age 17.

26 U.S.C. § 24(c)(1) (2004).[40]

Although the 2004 Act made changes to the CTC, the amendments did not affect the age limit of seventeen.  Congress repealed scheduled reductions to the CTC, extended the tax credit through 2012, and made a portion of the credit refundable.  Relevant to this case, it amended the definition of "qualifying child" for the CTC and four other commonly used provisions that provide benefits to taxpayers with children: the dependency exemption; the EITC; the dependent care credit; and head of household filing status.  8 Mertens Law of Fed. Income Tax'n § 32:2 (2014).  Because there were various different qualifications for these benefits, Congress sought to establish a uniform definition of "qualifying child."  The conference committee noted:

> Each provision ha[d] separate criteria for determining whether the taxpayer qualifies for the applicable tax benefit with respect

---

[39] All amendments were to §§ 24(a) or (d), which pertain to the amount of the tax credit.

[40] The language in this provision remains the same today.

> to a particular child. The separate criteria include[d] factors such as the relationship (if any) the child must bear to the taxpayer, the age of the child, and whether the child must live with the taxpayer. Thus, with respect to the same individual, a taxpayer [wa]s required to determine eligibility for each benefit separately, and an individual who qualifie[d] a taxpayer for one provision d[id] not automatically qualify the taxpayer for another provision.

H.R. Conf. Rep. 108-696, at 1051 (2004 WL 2920855).[41]

The Senate amendment addressing the definition of "qualifying child" in the five provisions that provide benefits to taxpayers with children was ultimately adopted in the 2004 Act.[42]  In explaining the Senate amendment, the conference report first noted three tests – residency, relationship and age – for determining a "qualifying child" that are generally applicable to all of the tax benefits relating to children:

> The Senate amendment establishes a uniform definition of qualifying child for purposes of the dependency exemption, the child credit, the earned income credit, the dependent care credit, and head of household filing status . . . . Under the uniform definition, in general, a child is a qualifying child of a taxpayer if the child satisfies each of three tests: (1) the child has the same principal place of abode as the taxpayer for more than one half the taxable year; (2) the child has a specified relationship to the taxpayer; and (3) the child has not yet attained a specified age.

H.R. Conf. Rep. 108-696, at 1056.

The report then examined the specific tests as applied to each benefit, explaining any differences in the tests among the provisions.  While stating that under the Senate amendment, the relationship and residency tests were identical for all five tax benefit

---

[41] Other purposes of the 2004 Act included to "amend the Internal Revenue Code of 1986 to end certain abusive tax practices, [and] to provide tax relief and simplification." *See* Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. 108-696, at 1029.

[42] There was no House bill addressing the definition of "qualifying child" in these provisions.

provisions, the conference report noted that "the age test varies depending upon the tax benefit involved."  H.R. Conf. Rep. 108-696, at 1056-57.  It described an age test, where, "*[i]n general*, a child must be under age 19 (or under age 24 in the case of a full-time student) in order to be a qualifying child," and where, "*[i]n general*, no age limit applies with respect to individuals who are totally and permanently disabled within the meaning of section 22(e)(3) at any time during the calendar year."  *Id.* at 1057 (emphases added). Significantly, however, the committee reported that the "Senate amendment *retains the present-law requirements that a child must be . . . under age 17 (whether or not disabled) for purposes of the child credit*."  *Id.* at 1057 (emphases added).

The conference report also noted the changes that the Senate amendment would have on particular provisions then in effect.  With respect to the CTC, it stated:

> The present-law child credit generally uses the same relationships to define an eligible child as the uniform definition. The present-law requirement that a foster child and certain other children be cared for as the taxpayer's own child is eliminated. *The age limitation under the Senate amendment retains the present-law requirement that the child must be under age 17, regardless of whether the child is disabled.*

H.R. Conf. Rep. 108-696, at 1059 (emphasis added).  Thus, the report expressly stated that in the new bill, even though no age limit applies with respect to permanently disabled individuals for most tax benefits, the age limit of seventeen years still applies to the CTC, regardless of whether the individual is disabled.

A comparison of the plain language of the initial version of § 24(c) to the 2004 amended version supports the same interpretation.  To determine the requirements for a "qualifying child," the earlier version of the CTC provision looked to § 151's support and income criteria for the dependent exemption and the relationship criteria for § 32(c)(3)'s

23

EITC, and fixed an age limit of seventeen years.  The 2004 version of § 24(c) refers to § 152(c)'s[43] relationship, support and residency criteria for "qualifying child," and retains the age limit of seventeen.  The only difference between the earlier and later versions of § 24(c) is that the criteria for the relationship and support tests are now found in one provision, § 152(c), whereas before the tests were in two provisions, §§ 151 and 32(c).[44]  Both versions of § 24(c) include an express age limit of seventeen years.  Therefore, it is clear from the statutory language and the legislative history that the age limit of seventeen years applies to the CTC, regardless of whether the individual is disabled.

### *Violation of Due Process Claim Under § 1983*

The Polskys argue that the IRS deprived them of their due process rights by intentionally failing to issue a Notice of Deficiency for the purpose of denying them Tax Court review of the disallowance of the CTC.  The Polskys cannot prevail on a due process claim because they have not stated a claim for a constitutional due process violation under § 1983.

To state a claim under 42 U.S.C. § 1983, the Polskys must allege facts, which, if proven, would establish that: (1) they were deprived of a right secured by the Constitution

---

[43] 26 U.S.C. §§ 151 and 152, as well as § 32, the EITC provision, were also amended as a result of the 2004 Act.  Section 151(c)'s age limits of nineteen or a student under twenty-four years were moved to § 152(c), and its income limits were eliminated.  Section 32(c)(3)'s special rule for a permanently and totally disabled dependent, which had been part of the EITC's age requirements since 1995, was also moved to § 152(c). Section 152 was amended to include residency criteria and different relationship and support criteria.

[44] Another difference is that former § 151 included age limits of nineteen or a student under twenty-four years, whereas amended § 152(c) includes these age limits plus the special rule for a permanently and totally disabled dependent.  However, for the same reasons § 151's age criteria did not apply to the earlier version of § 24(c), *see supra* note 38, neither the age limits nor the special rule set forth in § 152(c) apply to amended § 24(c).

or laws of the United States; and (2) the person depriving them of that right acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).  Because neither the named defendant nor the United States acted under the color of *state* law, the Polskys' § 1983 claim fails.

Federal agencies and their officials act under the color of federal law, not state law. Section 1983 does not apply to federal officials acting pursuant to federal law.  *Couden v. Duffy*, 446 F.3d 483, 499 (3d Cir. 2006) (citation omitted); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) (citing *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971)); *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (investigator for House Un-American Activities Committee who issued and served subpoena not acting under color of state law); *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. &and Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993) (Section 1983 claim could not be stated against HUD since it is a federal agency acting under the color of federal law); *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982) (federal officials act under color of federal law).  Because IRS employees acting within the course of their employment act under federal law, they cannot be sued as state actors under § 1983.  *See, e.g.*, *Church of Human Potential, Inc. v. Vorsky*, 636 F. Supp. 93, 95-06 (D.N.J. 1986) (stating that action of IRS employee taken pursuant to federal law cannot form the basis of a § 1983 claim); *Young v. I.R.S.*, 596 F. Supp. 141, 145 (N.D. Ind. 1984) (noting that actions of IRS officials, even if beyond the scope of their officials duties, are acts done under color of federal law and not state law, making § 1983 inapplicable); *Komasinski v. I.R.S.*, 588 F. Supp. 974, 978 (N.D. Ind. 1984) (stating that IRS employees involved in assessment of penalty and seizure of van were acting under federal

law).  Thus, their actions cannot form the basis for a claim under § 1983.

Additionally, if the United States or the IRS were named defendants, the Polskys'
§ 1983 would still fail.  Under § 1983, only "persons" may be sued for deprivation of civil
rights.  Neither the United States nor federal agencies are considered "'persons' within the
meaning of § 1983."  *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998) (quoting *Accardi
v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970)).  They are not proper defendants in
a federal civil rights action.  *Id.*  Therefore, because § 1983 applies only to "persons" acting
"under color of state law" and not to persons acting pursuant to federal law, the Polskys
have failed to state a claim for a constitutional due process violation under § 1983.[45]

In any event, the Polskys could not prevail because they have not alleged that they
have suffered any injury, much less a constitutional one.  The constitutional injury they
assert is that they were deprived of the right of judicial review of the IRS decision as a result
of the IRS's deliberate failure to issue a deficiency notice, which would have been their
"ticket" to the Tax Court.

Contrary to their contention, the Polskys were not deprived of access to the courts.
Even without a deficiency notice, the Polskys could have obtained judicial review of the
disallowance of their claim for the tax credit by bringing a § 7422 refund action in district
court.  In short, they were not denied access to the courts or a hearing on their claim.

The statutory provision for a refund suit, 26 U.S.C. § 7422, satisfies procedural due

---

[45] Even if we were to construe the Polskys' claim as seeking to assert a *Bivens* action against
individual IRS employees in their individual capacity, this claim would fail as well. Because Congress has
created an "extensive scheme providing remedies" to taxpayers complaining about conduct of IRS officials
in connection with tax assessments and collections, the court will not infer a *Bivens* remedy for "allegations
of unconstitutional actions by IRS agents."  *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 149 n.1 (3d Cir. 2000)
(citations omitted).

process.  *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974) (where IRS revoked university's tax-exempt status, school was afforded adequate due process because it had eventual "access to judicial review" in the form of a "suit for a refund," where it would have an "opportunity to litigate the legality of" the IRS's revocation of tax-exempt status).

Even if the IRS deprived the Polskys of a statutory right to receive a Notice of Deficiency and proceed in Tax Court, Congress's decision to afford more than due process for taxpayers does not automatically convert the statutory right and process into a constitutional due process right.  *Bothke v. Fluor Engineers & Constructors, Inc.*, 834 F.2d 804, 816 (9th Cir. 1987) (citation omitted).  As Justice Blackmun explained,

> Tax Court jurisdiction to determine liability prior to payment is predicated upon the existence of a "deficiency," within the meaning of § 6211(a), and upon the Commissioner's formal issuance of a notice of deficiency pursuant to § 6212(a). As a result, notices of deficiency have been described as " 'tickets to the tax court.'"  But this lack of access to the Tax Court . . . does not mean that [a taxpayer] is without effective judicial remedy to challenge the Commissioner's action. *Lack of access to the Tax Court does not equate with a denial of Fifth Amendment due process if due process is otherwise available.* . . .[I]t is at once apparent that the taxpayer has a variety of remedies to test the validity of the Commissioner's action [including] a refund suit . . . . The jurisdiction of [district] courts over a refund suit does not depend upon the existence of a formally asserted "deficiency," as does the jurisdiction of the Tax Court.

*Laing v. United States*, 423 U.S. 161, 206-07 (1976) (Blackmun, J., dissenting on other grounds) (emphasis added) (internal citations omitted).

A deficiency notice gives taxpayers an opportunity to litigate their tax liability in Tax Court *before* they must pay additional tax allegedly due.  In this case, the Polskys did not owe any money to the IRS at the time the IRS purportedly owed them a Notice of

Deficiency.  In other words, they did not have to pay any tax before filing suit.  Thus, they were not deprived of an opportunity for judicial review.

Because the Polskys have standing to bring a § 7422 refund suit in district court, they had an opportunity to "test the validity of the Commissioner's action" without going to the Tax Court.  *See Laing*, 423 U.S. at 206.  Consequently, because "due process is otherwise available," the Polskys' "[l]ack of access to the Tax Court does not equate with a denial of [their] due process rights."  *Id.*  Because the Polskys have not alleged that they have suffered any injury arising from a constitutional violation, they have failed to state a claim based upon the deprivation of a constitutional right.

## Conclusion

Ironically, even though we shall dismiss the Polskys' complaint, they have gotten what they seek – a judicial determination of whether they were entitled to the CTC.  In the course of our analysis, we have concluded that they were not eligible for the CTC.  Our determination does not mean that we agree that the arbitrary age limitation established by Congress is wise or necessarily fair.  But, it is not our function to rewrite the law passed by Congress.  Therefore, we must grant the motion to dismiss.